DONALD E. SMITH et al., Plaintiffs-Appellees, v. THE TRAVELERS INSURANCE COMPANY, Defendant-Appellant.

(No. 54407; ▮▮▮▮▮▮▮▮▮▮)

First District—January 8, 1971.

*Rehearing denied February 9, 1971.*

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (John M. O'Connor, Jr., and Alan H. Swanson, of counsel,) for appellant.

Kelner & Kelner, and Ralph G. Scheu, both of Chicago, for appellees.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This action was brought by the plaintiffs, as the beneficiaries of a certificate of insurance issued by the defendant, The Travelers Insurance Company (hereinafter "Travelers") under a group life policy. The trial court granted plaintiffs' motion for summary judgment and entered judgments in favor of each plaintiff for $10,000. The trial court denied Travelers' motion to vacate the summary judgments and overruled its motion for leave to file an answer to the complaint. From these orders and judgments Travelers appeals.

Based on the pleadings, affidavits and exhibits filed by the parties, the facts may be summarized. In 1954 Lucille M. Smith, Secretary of Brookline Industries, Inc., became insured under a group life insurance policy issued by Travelers to the Illinois Manufacturers Association (hereinafter "IMA"). Initially her coverage was for $10,000 but it was later increased to $20,000. In 1964 Lucille's grandsons, Donald E. Smith, President of Brookline Industries, and Robert H. Smith, also an official of Brookline Industries, were named equal beneficiaries. Each month Brookline Industries deducted an amount from Lucille's wages and paid the premium yearly to the IMA until September 1968. (In all the prior years, except in 1958, the premiums were paid before the end of October.) Around the end of September 1968 Donald E. Smith received an invoice (Exhibit 3) from the IMA for $3,152.87 for the yearly premium. This invoice, dated September 20, 1968, stated that the effective date of the IMA Group Life Insurance was September 1, 1968, and also said: "IMPORTANT. Payment is due on or before September 30th." As set forth in Donald Smith's affidavit, on or about November 13, 1968, he called the IMA and spoke to Ethel A. Stengel:

I said, "with reference to our group policy of Brookline Industries with Travelers Insurance Company, I am looking at your invoice for another premium of $3,142.87, I was thinking that over the years we have paid in more than the insurance coverage and that I would like to look around for a more economical coverage and possibly terminate the policy." The invoice I was referring to is hereto attached and marked Exhibit #3. We received this invoice around the end of September, 1968. Miss Stengel said "Hold on a moment." I waited, and after a few minutes she said, "It will be necessary for you to pay the premiums up to the present time." She said "If you pay ¼ of the

premium you will be covered up to the end of December which would include your grace period[1] so that you can come to a final decision before December to remain with the program or convert." I said "I will send in a fourth of this premium, which is $785.82 and will consider termination upon our finding a more economical program." She said "Send the check and a note about this."

Before the conversation with Miss Stengel he did not talk to anyone about his idea of termination. He made the phone call solely on his own thinking for the possible benefit to the company. He never instructed nor directed any person to terminate the insurance nor did he intend to terminate until a study could be made of what to do. Further, he needed time to talk to his brother and the member employees about terminating the group policy.

After his phone call with Miss Stengel he sent a letter together with a check for $785.82 to IMA. The letter read:

November 14, 1968

Illinois Manufacturers Association
Group Insurance Fund        RE: Invoice 9-20-68
200 South Michigan Avenue        $3,142.87
Chicago, Illinois 60604        Acct. #0022
Gentlemen:

With reference to the above premium invoice and our phone conversation of November 13, 1968, we request termination of the IMA Group Life Insurance Plan.

As per provisions required in the above policy, we enclose payment of $785.82 covering one quarter of the above premium.

       Yours very truly,
       Brookline Industries, Inc.
       Donald Smith
       President

DS/mb
Encl.

In her affidavit Ethel A. Stengel, Manager of the Insurance Department of IMA, stated that when she spoke to Donald Smith on November 13, 1968:

\* \* \* [S]he informed him that if one-quarter of the yearly premium were paid, insurance coverage would be afforded for three months from September 1, 1968 through November 30, 1968 and that there would be a thirty-one day grace period thereafter, up to and including

---

[1] "Grace period" refers to the thirty-one day extension period for payment of premiums. (Ill. Rev. Stat., 1969, ch. 73, par. 843(h).)

December 31, 1968, within which the conversion privileges [2] under the policy could be exercised;

[S]he informed him during the aforesaid telephone conversation that he could come to a final decision "before December" to remain with the program;

After receipt of Mr. Smith's letter requesting termination, Miss Stengel stated that the insurance was terminated on November 30, 1968.

According to the affidavit of Donald Smith, Lucille Smith died on December 5, 1968. After the funeral he called Miss Stengel and told her of his grandmother's death and asked her to send the necessary forms to present to Travelers. The forms were sent and filled out and returned.

Douglas J. MacLeod, a line adjuster for Travelers, stated in his affidavit: "At no time did any representative or agent of the Travelers Insurance Company represent to Donald Smith, or any one else, that the aforesaid policy would remain in full force and effect through December 31, 1968." He further related that the certificate of insurance provides that insurance under the group policy on any employee covered terminates when the employer member discontinues contributions to the IMA insurance fund; that the last premium contribution was made by Brookline Industries on November 14, 1968, for one-quarter of a year coverage as of September 1, 1968; and that no premium was tendered for the month of December during which Lucille Smith died.

On January 13, 1969, Miss Stengel sent Donald Smith a letter enclosing a letter from Travelers relating to the payment of the death claim of Lucille M. Smith, together with two checks of $1,000 each, one payable to Donald E. Smith and the other to Robert H. Smith.

The letter from Travelers quoted the conversion privilege of the policy which provided that upon the termination of the insurance an employee who had been insured for at least five years was entitled to have an individual life policy issued in an amount which would not exceed the lesser of (1) the amount of insurance on the employee on the date of termination of the insurance and (2) $2,000. It also provided that in the event of the death of the employee after the termination of the insurance and during the thirty-one day period for making application for an individual policy, the amount of individual insurance for which the employee would be entitled would be paid as a death benefit.

Since Lucille Smith's death occurred within the thirty-one day conversion privilege period, Travelers assumed she would have exercised her option to convert to a $2,000 policy even though she had not. Ac-

---

[2] "Conversion privilege" refers to the right of the insured to certain benefits upon *termination of the policy.* (This is more fully described in the opinion.)

cordingly Travelers paid the $2,000 as a death benefit to the designated beneficiaries, Donald Smith and Robert Smith.

Robert H. Smith, the other plaintiff-beneficiary, stated in his affidavit that he was never advised of any notice or letter to Travelers or the IMA about any request for termination of the policy. The first time he heard about the termination was around January 10, 1969, when he was shown the letter from Travelers. He had no reason to want to terminate the insurance. He never told anyone to do any act to terminate the insurance. He knew that his grandmother never knew of an act to terminate the insurance, and he also knew that his grandmother never told him or anyone in his presence to terminate the policy.

Mary Bolton, the comptroller of Brookline Industries, stated in her affidavit that Lucille Smith never spoke to her, and she never spoke to Lucille, about any termination of the insurance policy.

*Opinion*

Several contentions are made by the parties. However, we believe that one issue is dispositive of this appeal. Travelers contends that the granting of the summary judgments was error since there were genuine issues of material fact which were unresolved.

A reading of the pleadings, affidavits and exhibits filed by the parties raises a factual question as to the conditions under which the late payment of only one-fourth of the annual premium was made. The effect of Donald Smith's letter requesting termination of the policy based on the reference to the premium notice *and* the phone conversation of November 13, 1968, can only be determined after the conflicting versions of the phone conversation are decided by a trier of fact. Donald Smith claims that he was told in the phone conversation that upon payment of the quarterly premium he would have until the end of December to finally decide whether to continue the policy. Defendant contends that Smith was told that the quarterly payment carried the policy in effect only until November 30 and that when plaintiffs terminated the policy on November 14 the right to the grace period of thirty-one days was extinguished.[3]

We note that the premium was due on September 1 and that the invoice in heavy black type stated that payment must be made by September 30. Since no payment was made until November 14, the grace

---

[3] Ill. Rev. Stat. 1969, ch. 73, par. 843 (Standard Provisions for Group Life Policies):

    (h) A provision that the policyholder is entitled to a grace period of thirty-one days for the payment of any premium due except the first, during which grace period the death benefit coverage shall continue in force, unless the policyholder shall have given the company written notice of discontinuance in advance of the date of discontinuance and in accordance with the terms of the policy.

period of thirty-one days had expired, and terms of payment and the conditions of acceptance of the late payment were fixed by the telephone conversation. There are conflicting versions of that conversation. Therefore, we believe that a genuine issue of fact existed and that it was error to grant summary judgments in favor of plaintiffs.

As stated in *Barkhausen v. Naugher*, 395 Ill. 562, 567:

Where, as here, it is apparent that a controversy does exist, the entry of a summary judgment is improper. The provisions of the statute and the rules were intended to facilitate litigation and to expedite trial procedure through the use of the summary judgment. This, however, cannot be employed where it is shown that there is an actual dispute as to the facts and that there exists a triable issue.

See also *Applicolor, Inc. v. Surface Combustion Corp.*, 77 Ill.App.2d 260.

The judgments are reversed and the cause is remanded with directions to allow Travelers to file its answer and for further proceedings not inconsistent with this opinion.

In view of our decision the other issues presented to us may be raised in the trial court.

Reversed and remanded with directions.

STAMOS, P. J., and ENGLISH, J., concur.