ESTATE OF NORMAN KERN, Deceased, Petitioner-Appellant, *v.* RICHARD A. HANDELSMAN *et al.*, Respondents-Appellees.

First District (5th Division)   No. 81—1695

Opinion filed June 17, 1983.

Arvey, Hodes, Costello & Burman, of Chicago (Ralph A. Mantynband and Leonard D. Saphire-Bernstein, of counsel), for appellant.

Selwyn Zun, Robert W. Gettleman, and Ellen A. Fredel, all of Chicago (D'Ancona & Pflaim, of counsel), for appellees.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

This is an appeal from an order granting respondents summary judgment (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c)) in an action brought by the executrix of the estate of Norman Kern (petitioner) to recover money allegedly due under a contract between the decedent and respondents. We reverse.

Norman Kern was the sole shareholder and principal officer of Kern Option Company, Inc. (Kern Option), a corporation engaged in the stock options clearing business. In June 1976, Kern sold his company to Richard A. Handelsman (Handelsman), Alan M. Resser (Re-

sser) and Richard D. Kushnir (Kushnir) for $700,000; $200,000 was paid in cash for the capital stock of the corporation and the remaining $500,000 was to be paid over the next five years pursuant to a Consulting and Non-Competition Agreement (the Agreement) with Kern Option. The pertinent sections of that Agreement will be explained in part as necessary.

Paragraph two of the Agreement stated that Kern would provide consulting and advisory services to Kern Option for five years, subject to possible extensions. As compensation for his services, Kern would receive an annual sum equal to 12½% of Kern Option's pretax profits, up to a maximum amount of $50,000. Over this five-year period, Kern could possibly receive a total of $250,000.

Paragraph seven of the Agreement provided that Kern would not compete against Kern Option in the stock options clearing business for five years. As consideration for his covenant not to compete, Kern Option agreed to pay Kern $50,000 per year. (This would also total $250,000.)

Paragraph five of the Agreement provided that in the event of Kern's death, the payments for his consulting services would be continued for one year after his death and the noncompetition payments would be prorated through the date of his death.

Paragraph 14 of the Agreement provided that all subsequent modifications had to be in writing.

In 1977, a little over a year after the Agreement, Kern met with Handelsman, Resser and Kushnir, and on December 16, 1977, he executed a letter to Kern Option which stated that the meeting had resulted in an "understanding" of the manner of determining Kern's compensation for his consulting and advisory services. Kern's letter (the Amendment Letter) stated further that "in view of the fact that Kern will have been paid less than $50,000 for the first Agreement year [June 1, 1976, to May 30, 1977], the Agreement will be extended. for at least one more year *** on the same terms and conditions (except for the $50,000 annual payment for Kern's non-competition covenant under Paragraph 7 of the Agreement) *** until Kern had received an aggregate of $250,000."[1] Kern's letter concluded that it was to constitute an amendment to the 1976 Agreement. The letter was signed by both Kern and Richard Handelsman, who then was president of Kern Option.

The next year, 1978, Kern received *$50,000 in noncompetition*

---

[1] For 1976-1977, Kern had received $50,000, the maximum allowable for his consulting services. He received $31,793 for his agreement not to compete.

payments and $45,658 in consulting payments.[2]

Kern died on February 5, 1979. Citation proceedings were filed in the probate division of the circuit court in March 1980 against Kern Option and Handelsman by Kern's wife, Portia Kern, executrix of her husband's estate. It was alleged that Kern Option owed Norman Kern $327,452, that the company had invested a portion of this money in treasury bills and that the estate was entitled to the interest earned on these investments. In response, Kern Option and Handelsman denied that they held any treasury bills belonging to the estate and, further, that based on their accounting, the company only owed $84,383.56, $50,000 of which was for Norman Kern's consulting services; $34,383.56 would be a final noncompetition payment prorated through the date of Kern's death. Petitioner then filed a motion for partial summary judgment in the amount of $84,383.56 which was granted on August 4, 1980. Respondents paid the debt in full on August 15, 1980.

Respondents then filed a motion for summary judgment on the ground that all of the contractual obligations under the 1976 Consulting and Non-Competition Agreement had been met except for one final payment for Kern's consulting services in the amount of $29,166.67, due September 28, 1980.[3] At the summary judgment hearing, petitioner's counsel submitted his personal affidavit stating that Alan Resser, who was one of the original purchasers of Kern Option Company from Norman Kern, would, upon his return to the United States, execute an affidavit concerning the financial disputes in 1977 between Norman Kern and the owners of Kern Option—at that time, Resser, Handelsman and Kushnir. The attorney further stated that in order to compromise and settle the disputes, the parties agreed in November and December 1977 that Kern Option Company would "execute such further and future agreements as would be necessary to assure that Norman Kern received the total payment of $500,000 due him by reason of the sale of the shares of Kern Option Co., Inc." The trial court granted respondent's motion to strike the attorney's affidavit, and on January 7, 1981, summary judgment was entered in their favor.

On February 5, 1981, petitioner filed a post-judgment motion to

---

[2]Alan Resser and Richard Kushnir sold their interest in Kern Option on March 13, 1978, to Handelsman and a new buyer, Arnold Zousmer. Respondent A. G. Becker Company, Inc., purchased Kern Option Company in September 1979. Becker, Kern Option Company and Richard Handelsman are represented in this cause by the same counsel.

[3]This payment was made prior to the summary judgment hearing.

vacate the summary judgment. In support of her motion, petitioner attached the substantially identical affidavits of Alan Resser and Richard Kushnir which stated that prior to December 16, 1977, the date of the Amendment Letter, the officers of Kern Option "orally agreed to compromise and settle all those disputes with Norman Kern on the basis that such further and other agreements would be entered into by and between Kern Option Co., Inc., Richard Handlesman [sic], Allen [sic] Resser, Richard D. Kushnir and Norman Kern as would be necessary to cause Kern Option Co., Inc. to pay to Norman Kern the total sum of $500,000 without regard to any abatement that might occur under the [1976 Consulting and Non-Competition Agreement]." The Resser and Kushnir affidavits concluded that the oral agreement had been partially performed when the 1977 Amendment Letter was executed.

Handelsman then filed a counteraffidavit along with the Stock Purchase Agreement of March 13, 1978, in which Kushnir and Resser sold their interest in Kern Option to Handelsman and Arnold Zousmer. The Stock Purchase Agreement merely stated that Handelsman and Zousmer "recognize that in connection with the purchase of said shares [Kern Option] is obligated for all payments and liabilities [Kern Option] has to Norman Kern under the Stock Purchase Agreement dated May 24, 1976, including the Consulting and Non-Competition Agreement *** and the Amendment Letter to same dated December 16, 1977." The Stock Purchase Agreement also stated that no writing or memorandum amending the 1976 Consulting and Non-Competition Agreement would be executed without the prior approval of Zousmer.

After hearing arguments of counsel, the trial court denied petitioner's post-judgment motion to vacate the summary judgment. This appeal followed.

OPINION

Petitioner contends that the trial court's entry of summary judgment was improper because a genuine issue of material fact remained unresolved. It is argued that the subsequent oral and written modifications in 1977 raised the question of the exact terms of the 1976 Agreement. The specific question in issue is whether respondents had the duty to pay Kern the total sum of $500,000, as both Richard Kushnir and Alan Resser alleged in their affidavits, "without regard to any abatement that might occur under any term of the original [1976] agreement." Petitioner argues further that at the very least the affidavits create a factual question as to what were the amended terms of the 1976 contract. We agree.

A motion for summary judgment is proper where the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) The extreme nature of the summary judgment remedy requires that the trial court exercise extraordinary diligence in its review of the record (*Riley v. Singer* (1979), 75 Ill. App. 3d 1036, 394 N.E.2d 746) so as not to preempt the right of a trial by jury or the right to fully present the factual basis for a claim. (*Chaplin v. Geiser* (1979), 79 Ill. App. 3d 435, 438, 398 N.E.2d 628; *Cantu v. Utility Dynamics Corp.* (1979), 70 Ill. App. 3d 260, 263, 387 N.E.2d 990.) The trial court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent. (*Martin v. American Legion Post #784* (1978), 66 Ill. App. 3d 116, 383 N.E.2d 672.) Summary judgment should be granted only when the party's right to it is clear and free from doubt. (*Kitsos v. Terry's Chrysler-Plymouth, Inc.* (1979), 70 Ill. App. 3d 728, 388 N.E.2d 1054; *Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 437, 344 N.E.2d 29.) On appeal, the court will reverse an order granting summary judgment if it determines that a material question of fact exists and that the moving party is not entitled to a judgment as a matter of law. *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1; *In re Estate of Tomaso* (1980), 82 Ill. App. 3d 286, 288, 402 N.E.2d 702.

Our analysis of the record reveals that a genuine issue of material fact exists as to the terms of the 1976 purchase Agreement. Although respondents alleged in their motion for summary judgment that, with the exception of a final payment for consulting services, they had satisfied all of their contractual obligations under the 1976 Agreement, petitioner persuasively argued in rebuttal that the 1977 Amendment Letter clarified the method of computing Kern's consulting payments and added assurance that the entire purchase price of $500,000 would be paid regardless of any intervening circumstances.[4]

■■ Considering all of the evidence, as we must, most liberally for petitioner and against respondents, it is our opinion that the facts are not clear and free from uncertainty that the 1976 Agreement was modified by the subsequent Amendment of December 1977. If fair-

---

[4]Respondents contend that because the 1977 Amendment Letter did not abrogate paragraph five (the death and disability clause) of the 1976 Agreement, that Agreement stands unchanged. Respondents' motion for summary judgment and the memorandum that was attached thereto did not mention the 1977 Amendment Letter in any way.

minded persons could draw more than one conclusion or inference from the facts, including one unfavorable to the moving party, a triable issue exists and the motion for summary judgment should be denied. It is only when the undisputed facts are susceptible of but a single inference that the issue becomes one of law. (*Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 60-61; 324 N.E.2d 444.) The error in granting summary judgment in this case is highlighted by the fact that the trial court dismissed the attorney's affidavit which stated that Alan Resser, one of the original purchasers of Kern Option Company in 1976, would submit an affidavit stating that the purchase Agreement had in fact been modified in 1977. Under Illinois law, parties to a written contract may alter or modify its terms by a subsequent oral agreement even though, as in the instant case, the contract precludes oral modifications. (*Park v. Dealers Transit, Inc.* (7th Cir. 1979), 596 F.2d 203, 204.) Additionally, where it is apparent that a controversy exists, the entry of a summary judgment is improper. (*Smith v. Travelers Insurance Co.* (1971), 131 Ill. App. 2d 476, 481, 266 N.E.2d 695.) The trial court therefore improperly ruled that the written and oral modifications specifically mentioned in the Resser and Kushnir affidavits did not affect the 1977 purchase Agreement. In our opinion, the Amendment Letter as well as the affidavits explicitly suggest that there were many material changes in the 1977 Agreement, most notably, the amount of compensation that Kern would receive, the significance, if any, of the death and disability clause (paragraph five) and the length of time that the Agreement would be in effect. These possible changes are material questions of fact.

Because of our resolution of this appeal, we need not consider the other issues raised by petitioner. The trial court's order granting respondents' summary judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SULLIVAN and LORENZ, JJ., concur.