In re ESTATE OF NORMAN KERN, Deceased (Portia Kern, Ex'x of the Estate of Norman Kern, Petitioner-Appellant, v. Richard A. Handelsman *et al.*, Respondents-Appellees).

First District (5th Division)   No. 84—1823

Opinion filed March 31, 1986.

Arvey, Hodes, Costello & Burman, of Chicago (Ralph A. Mantynband and Leonard Saphire-Bernstein, of counsel), for appellant.

Selwyn Zun and Robert W. Gettleman, both of D'Ancona & Pflaum, of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal from a final order in a citation proceedings brought by the executrix of the estate of Norman Kern, deceased, for delivery of money and other property of the estate of decedent. This is the second time the matter is before this court. It was originally before this court in *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 450 N.E.2d 1286.

The original case involved an appeal by the estate of Norman Kern from an order of the trial court granting summary judgment in favor of the respondents-appellees, Richard A. Handelsman, Kern Option Company, Inc., and A. G. Becker Company, Inc.

This court reversed the trial court order granting summary judgment and remanded the matter for further proceedings. In the original appeal, this court found that there were material questions of fact presented. On remand, the trial court heard testimony and received

documents and entered judgment again in favor of respondents.

The estate again appealed.

The record discloses that the decedent (Kern) was a commodities broker and founder of the Kern Option Company, Inc. (Kern Option).

In 1976, respondent Handelsman, along with Richard Kushnir and Allen Resser, purchased all of the shares of Kern Option from decedent Kern for $700,000, payable $200,000 in cash and $500,000 in deferred payments pursuant to a consulting and noncompetition agreement.

Three years later, after Kern's death and after the institution of these proceedings, respondent A. G. Becker and Company, purchased from Handelsman the shares of Kern Option for $4,652,202.69, payable $2 million plus in cash and $1,800,000 as consultant fees over a period of years.

The initial purchase agreement in 1976 between respondents Handelsman, Kushnir, and Resser, provided that the remaining $500,000 of the initial purchase price of $700,000 was to be paid to Kern over the next five years pursuant to a consulting and noncompetition agreement with Kern Option.

Paragraph 2 of the agreement provided that Kern would provide consulting and advisory services to Kern Option for five years, subject to possible extensions, as compensation for his services. Kern would receive an annual sum equal to 12½% of Kern Option's pretax profits, up to a maximum amount of $50,000. Over this five-year period, Kern could possibly receive a total of $250,000.

Paragraph 7 of the agreement provided that Kern would not compete against Kern Option in the stock option clearing business for five years. As consideration for his noncompetition covenant, Kern Option agreed to pay Kern $50,000 per year. (This would also total $250,000.)

Paragraph 5 of the agreement provided that in the event of Kern's death, the payments for his consulting services would be continued for one year after his death and the noncompetition payments would be prorated through the date of his (Kern's) death.

Paragraph 14 of the agreement provided that all subsequent modifications are to be in writing.

In 1977, a little over a year after the agreement, Kern met with Handelsman, Resser, and Kushnir, and on December 16, 1977, Kern executed a letter to Kern Option which stated that the meeting had resulted in an "understanding" of the manner of determining Kern's compensation for his consulting and advisory services. Kern's amendment letter stated further that "in view of the fact that Kern will have been paid less than $50,000 for the first agreement year (June 1,

1976, to May 30, 1977,) the agreement will be extended for at least one more year *** on the same terms and conditions (except for the $50,000 annual payment for Kern's noncompetition covenant under Paragraph 7 of the agreement) until Kern had received an aggregate of $250,000." Kern's letter concluded that it was to constitute an amendment of the 1976 agreement. The letter was signed by the decedent, Kern, and respondent Handelsman, the president of Kern Option. During the next year (1978), Kern received $50,000 in noncompetition payments and $45,658 in consulting payments.

Kern died February 5, 1979. In March 1980, his wife as executrix instituted the initial proceedings, alleging that Kern Option owed Kern $327,452 that the company had invested in treasury bills and that Kern's estate was entitled to interest earned on these investments.

Respondents, Kern Option and Handelsman, responded contending they did not hold any treasury bills. They further contended that their accounting disclosed that respondents owed Kern only $84,383.56. Fifty thousand dollars of said amount was for Kern's consulting services, and $34,383.56 was for a final noncompetition payment prorated through Kern's death. The estate filed a motion for partial summary judgment in the amount of $84,383.56 which was granted on August 4, 1980, and paid on August 15, 1980.

Respondents then filed their motion for summary judgment on the theory that all their obligations under the 1976 consulting and noncompetition agreement had been met except for one final payment for Kern's consulting service in the amount of $29,166. In response, the attorney for the estate filed his affidavit stating that Resser, one of the original purchasers of Kern Option with Handelsman, would, on his return from Europe, execute an affidavit to the effect that the parties agreed in November and December of 1977, that in order to settle their disputes, Kern Option would execute such other agreements as to assume that Kern would receive the full $500,000 due him by reason of the sales.

In a post-judgment motion to vacate a summary judgment granted respondents, the estate did attach the affidavits of Resser and Kushnir which stated that, prior to the December 16, 1977, amendment letter, the officers of Kern Option "orally agreed to compromise and settle all those disputes with Norman Kern on the basis that *** agreements would be entered into *** as would be necessary to cause Kern Option Co., Inc., to pay to Norman Kern the total sum of $500,000 without regard to any abatement that might occur under the *** [1976 consulting and non-competition agreement]." The Re-

sser and Kushnir affidavits concluded that the oral agreement had been partially performed when the 1977 amendment letter was executed.

The trial court denied the post-trial motion of the estate to vacate the summary judgment. The estate appealed.

This court, in *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 450 N.E.2d 1286, reversed and remanded for further proceedings, holding that questions of fact were present that precluded summary judgment.

The court stated:

"In our opinion, the Amendment Letter as well as the affidavits explicitly suggest that there were many material changes in the 1977 Agreement, most notably, the amount of compensation that Kern would receive, the significance, if any, of the death and disability clause (paragraph Five) and the length of time that the Agreement would be in effect. These possible changes are material questions of fact." *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 794, 450 N.E.2d 1286.

On remand, the trial court heard the testimony of Resser and Kushnir, who signed the initial affidavits referred to in this court's original opinion. The court also heard the testimony of Willard Nyman and Kern Option's attorney and respondent Handelsman.

Based on the testimony and documents introduced into evidence, the trial judge on June 29, 1984, filed an opinion finding "no oral agreement to pay the full $500,000 without regard to the death abatement provision of Paragraph Five of the consulting and non-competition agreement."

On July 24, 1984, the trial judge entered his final order entering judgment in favor of respondents. The trial judge, after remand in the original action in which he granted the estate's petition for partial summary judgment in the amount of $84,383.56, did order respondents to pay prejudgment interest in the amount of $4,383 after their offer to pay such interest.

The estate's second appeal charges that the evidence established that the agreement provided Kern would receive the entire $500,000 without condition. The estate further contends that the trial court erred and failed to follow this court's original opinion when it ruled the original agreement and its terms of abatement remained in effect after the subsequent settlement agreement.

Finally, the estate charges it is entitled to earn income on the principal of the amount due the estate from respondents, either upon a theory of constructive trust or the disgorgement of income on funds

of the estate improperly retained by respondents.

Based on these claims, the estate contends there is due it the sum of $281,243.54, constituting $203,800.82 in principle and $77,442.72 in earned income. Respondents contend that petitioner's claims are without merit and that the trial court's final order should be affirmed.

It is undisputed that Kern, as seller, and Handelsman, Resser, and Kushnir, on May 24, 1976, executed a written contract for the purchase of 2,000 shares (all the shares) of the Kern Option Company, Inc., at a price of $100 per share. The stock purchase agreement provided for a closing on June 1, 1976, at which time the buyers were to pay $200,000; $100,000 of the amount was to be deposited in escrow pursuant to an escrow agreement and the remaining $100,000 was to be delivered to the seller. The purchase agreement provided for the company and seller to execute a consulting and noncompetition agreement and limited guaranties in a form of a Schedule F. attached to the May 24, 1976, stock purchase agreement.

On June 1, 1976, the corporation and Kern executed a consulting and noncompetition agreement providing for a term of five years, starting on June 1, 1976, and ending May 31, 1981. This agreement provided payment to Kern as compensation for consulting and advisory services to be rendered by Kern to the corporation of a sum equal to 12½% of Kern's Option pretax profit, up to a maximum annual compensation of $50,000. It also provided that if less than $250,000 was paid to Kern, over the five-year term, compensation would continue at the 12½% rate aforesaid, up to a maximum of $50,000 until Kern received an aggregate of $250,000 under the paragraph of the agreement (Paragraph 2) providing for compensation for consulting and advisory services.

The June 1, 1976, consulting and noncompetition agreement provided for the payment of $50,000 to Kern for five years, or an aggregate of $250,000, for Kern's noncompetition covenant (Paragraph 7). It also provided that, in the event of Kern's death or physical or mental disability (for six consecutive months), Kern Option would continue to pay the compensation for consulting and advisory services for one year following Kern's death or total disability or through the remainder of the five-year term, whichever was less (Paragraph 5).

The agreement provided for the payment of the compensation for the noncompetition of Kern prorated through the date of his death or the end of six months of total disability as the case be (Paragraph 5). The agreement provided that it was the entire agreement of the parties superseding any and all other agreements orally or in writing and could not be changed or terminated orally, but only by written instru-

ment signed by the party against whom enforcement, change, modification, or discharge is sought.

The amendment letter of December 16, 1977, signed by Kern and agreed to by Kern Option refers to a meeting of December 16, 1977, at which the compensation due Kern under Paragraph 2 of the June 1, 1976, agreement was discussed. It states that "an understanding of the manner of determining the compensation payable to Kern under Paragraph 2 of the agreement with respect to the first year thereunder and the manner of determining such compensation in the future." Paragraph 2 of the June 1, 1976, agreement refers only to the amount, payable to Kern for consulting and advisory services. It does not provide for payment to Kern for his covenant not to compete. Paragraph 7 of said agreement provides for such payment as heretofore indicated. Nowhere does the December 16, 1977, letter agreement discuss the payments to be made to Kern for his noncompetition covenant.

The settlement letter of December 16, 1977, does not refer at all to the abatement provision contained in the original consulting and noncompetition agreement of January 1, 1976, which is contained in Paragraph 5 of the agreement.

The estate argues in point one of its brief that the evidence discloses that the settlement agreement provided Kern would receive the entire $500,000; $250,000 for the consulting and advisory service and $250,000 for the agreement not to compete. Yet, the amendment letter of December 16, 1977, does not indicate at all that it was intended to replace the June 1, 1976, consulting and noncompetition agreement signed by Kern and respondent Handelsman as president of respondent, Kern Option Company, Inc. As a matter of fact, the concluding paragraph of the December 16, 1977, amendment letter reads:

> "Upon your review of the foregoing, if you are in agreement therewith, please execute and return one copy of this letter, which shall constitute an amendment to the agreement."

Contrary to the petitioner estate's argument in the present appeal, this court, in its initial opinion in this case, did not hold that the 1977 later agreement cancelled the terms of the abatement on disability or death contained in the original 1976 written agreement. What the court did state in its original opinion was that the amendment letter of December 16, 1977, between Kern and Kern Option, together with the affidavits of Kushnir and Resser (parties to the original buy and sell agreement), suggested that there were many changes in the original 1976 agreement.

The testimony of Kushnir and Resser in the trial court was sub-

stantially different with respect to the 1976 abatement clause than that contained in their affidavits considered by this court in the original case.

As disclosed in the original case, *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 450 N.E.2d 1286, Resser and Kushnir presented identical affidavits in support of petitioner's estate motion to vacate the original summary judgment. The affidavit stated with respect to the total sum of $500,000:

> "[T]he officers of Kern Option 'orally agreed to compromise and settle all those disputes with Norman Kern on the basis that such further and other agreements would be entered into by and between Kern Option Co., Inc., Richard Handlesman [*sic*], Allen Resser, Richard D. Kushnir, and Norman Kern as would be necessary to cause Kern Option Co., Inc., to pay to Norman Kern the total sum of $500,000 without regard to any abatement that might occur under the [1976 Consulting and Non-Competition Agreement].' " *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 792, 450 N.E.2d 1286, 1288.

At the trial, Resser testified he did not know what the word "abatement" meant and the word was never used in his conversations with Norman Kern as to what would happen in case of Kern's death. He further testified that the amendment letter satisfied all of Kern's objections and covered all disputes. In his testimony before the trial judge on April 16, 1984, Resser testified as follows:

> "Q. Please answer my question. Did you at any time discuss with Norman Kern what would happen in case of his death in light of the provision in the consulting and non-competition agreement that cut off fees if he died?
>
> A. (Resser) If the word "death" is the word, the primary word, then the answer is no.
>
> Q. Well, what other word? As a matter of fact, you never discussed an abatement provision at all?
>
> A. (Resser) I don't know what abatement means.
>
> Q. To stop something from continuing.
>
> A. (Resser) Okay.
>
> Q. That never was discussed that you would abate something.
>
> A. That is correct, those words were never used.
>
> * * *
>
> A. Yes, I remember the question.
>
> Q. Isn't it true that you never had an agreement to enter into any other agreements?

A. (Resser) Well, the answer to the question is yes."

Kushnir also testified that he never agreed to any other agreements with Kern, that he only recently became aware of the death abatement provision in the agreement, that during all the conversations and disputes, Norman never addressed nor discussed what would happen in case he died. He further testified that, specifically aside from the amended letter, there was no other agreement with Kern.

■ It is the law in Illinois, as stated in the original opinion, that the terms of a written contract may be altered by a subsequent oral agreement even though the contract precludes oral modifications. *Park v. Dealers Transit, Inc.* (7th Cir. 1979), 596 F.2d 203.

However, as the learned trial judge in this case notes in his opinion in ·the matter, the party who asserts the existence of an oral agreement has the burden of proving the terms of an oral agreement, and to be enforceable, its terms must be definite and certain. *Panko v. Advanced Appliance Service* (1977), 55 Ill. App. 3d 301, 371 N.E.2d 3.

■ Furthermore, whether an oral contract exists, its terms and conditions and intent of the parties are questions of fact. A reviewing court may not reverse the judgment of the trial court merely because different conclusions could be drawn. *Orput-Orput & Associates, Inc. v. McCarthy* (1973), 12 Ill. App. 3d 88, 298 N.E.2d 225.

■ The oral testimony of Resser and Kushnir does clearly indicate an oral understanding between Kern and the Kern Option Company that Kern would get the full $500,000 alleged purchase price of the stock. Yet, the inconsistency in their testimony concerning the abatement provision, plus the testimony of Handelsman and Resser to the effect that the abatement on account of Kern's death did not come up in discussion resulting in the 1977 amendment, support the trial court's finding that there is no oral agreement by respondents Handelsman and Kern Option to pay the full $500,000 without regard to the death abatement provision of Paragraph 5 of the June 1, 1976, consulting and noncompetition agreement.

■ Finally, with respect to the petitioner's estate claim that income earned on the principle of the amount retained by Kern Option should be disgorged by respondent to the estate, the court finds that this claim is also without substantive merit. Constructive trusts that are imposed, requiring disgorgement of earned income, are divided into two classes: One, where actual fraud is present; the other is where there is a breach of a fiduciary relation by the dominant party. *Dial v. Dial* (1959), 17 Ill. 2d 537, 162 N.E.2d 404.

The petitioner has not alleged nor does the evidence disclose ei-

ther a fraud by respondents or any fiduciary duty respondents owed either the decedent or his estate. All that is alleged is the breach of a contract allegedly modified by an oral settlement agreement. Breach of either a written or oral contract does not give rise to constructive trust. (*Swanson v. Randall* (1964), 30 Ill. 2d 194, 195 N.E.2d 656.) As this court said in *Bachewicz v. American National Bank & Trust Co.* (1984), 126 Ill. App. 3d 298, 312, 456 N.E.2d 1096:

> "In the instant case, plaintiff alleges neither fraud nor a fiduciary relationship. What plaintiff does allege is breach of contract. However, mere breach of contract does not give rise to a constructive trust. [Citation.] For these reasons, we reverse the trial court's award of general damages and, correspondingly, the award of prejudgment interest thereon."

For the foregoing reasons, we affirm the trial judge's judgment for respondents.

Affirmed.

LORENZ and PINCHAM, JJ., concur.