GARRY D. KEMP, Plaintiff-Appellant, v. BRIDGESTONE/FIRESTONE, INC., f/k/a Firestone Tire and Rubber Company, *et al.*, Defendants-Appellants (Bridgestone/Firestone, Inc., Third-Party Plaintiff-Appellant; John L. Simmons Construction Company, Third-Party Defendant-Appellee).

Fourth District   No. 4—93—0250

Argued October 20, 1993.—Opinion filed December 9, 1993.

R. Michael Henderson and David B. Collins (argued), both of Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria, for appellants Bridgestone/Firestone, Inc., and Firestone Tire and Rubber Company.

David W. Stuckel (argued), of Harvey & Stuckel, Chartered, of Peoria, for appellant Garry D. Kemp.

Christopher L. Nyweide (argued), of Livingston, Barger, Brandt & Schroeder, of Bloomington, for other appellant.

Mary Jo Connelly, of Sweeney & Riman, Ltd., of Chicago, for appellee.

JUSTICE LUND delivered the opinion of the court:

Pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), plaintiff Garry Kemp (Kemp) and defendants Bridgestone/Firestone, Inc. (Firestone), and Defender Services, Inc. (Defender), appeal an order of the circuit court of McLean County granting the motion of third-party defendant John L. Simmons Construction Company (Simmons), Kemp's employer, to enforce a settlement with Kemp, finding that the settlement was in good faith and dismissing Simmons as a third-party defendant. We reverse.

Kemp filed a workers' compensation claim against Simmons for an injury allegedly sustained on March 15, 1987. In 1988, he filed a common law action against Firestone and Defender, alleging that their negligence caused his injuries. Firestone and Defender both filed third-party complaints against Simmons pursuant to the Illinois Contribution Act (Contribution Act) (Ill. Rev. Stat. 1987, ch.

70, par. 301 *et seq.*). Thereafter, Kemp obtained a voluntary dismissal of the case.

Kemp and Simmons entered into negotiations to settle the workers' compensation case. Those negotiations culminated in a March 30, 1992, letter from Simmons' counsel, Francis Brady, to Kemp's counsel, Wayne Harvey, offering a lump-sum payment to Kemp representing 25% loss of use of the man, plus waiver of 15% of Simmons' "outstanding lien." By letter dated April 14, 1992, Harvey forwarded blank settlement contracts to Brady which had been signed by Kemp, and asked Brady to prepare the contracts "per our agreement." When completed, the settlement agreement, which used the Illinois Industrial Commission (Industrial Commission) form "Settlement Contract Lump Sum Petition and Order," did not mention the 15% lien waiver. The terms of settlement were described in the contract as follows:

> "Respondent to pay and petitioner to accept $36,701.25 in full settlement of all claims under the [Workers'] Compensation Act for injuries allegedly incurred on or about 3/13/87 [and] 3/14/87[,] including any results, developments[,] or sequelae, fatal or non[]fatal, allegedly resulting from such accidental injuries. Issues exist as to whether such injuries are compensable, and this settlement is made to settle these issues. The settlement includes liability for temporary total compensation and all medical, surgical[,] and hospital expenses incurred or to be incurred allegedly resulting from the accidental injury, for all of which the petitioner assumes responsibility. Review under Sections 19(h) and 8(a) is waived by the parties. The settlement represents: 25% loss of use of the man. Parties further expressly agree that any bills not heretofore paid and which are outstanding (whether known or unknown) hereby become, and shall remain, exclusively the responsibility of petitioner and he, and/or his representatives[,] shall save and hold harmless respondent from such obligations."

The gross amount due to Kemp under the settlement was $36,701.25. It was established that Simmons had paid an additional $156,198.18 in benefits to Kemp, for a total amount paid in workers' compensation benefits of $192,899.43.

On April 9, 1992, Kemp refiled his lawsuit in the instant case against Firestone and Defender, and those defendants filed third-party complaints against Simmons, seeking contribution. Sometime after the settlement of the workers' compensation case was agreed

upon (it is not clear from the record exactly when), Brady sent Harvey a document entitled "Worker's Compensation Subrogation Agreement" for Kemp's signature. The parties to that document were Kemp and Continental Casualty Company (Continental), insurance carrier and subrogee of Simmons. In that document, Continental agreed to forego enforcement of 15% of its "net recoverable Worker's Compensation lien" (described as being equivalent to $21,701.19) as to any possible recovery by Kemp from third persons who may be liable for injuries sustained in the course of his employment, in return for a termination of liability in a common law action. The agreement further calculated the amount of the lien Continental would be allowed to enforce as $122,973.39, less a proration of costs incurred by Kemp pursuant to law. Kemp refused to sign this document. The parties nonetheless concluded the settlement, which was approved by the Industrial Commission on June 30, 1992.

Continental was allowed to intervene in the instant case to claim a lien on any recovery Kemp might receive for amounts it paid to him in the workers' compensation case. Continental claimed a lien for the full amount it paid Kemp ($192,899.43), or, in the alternative, to the extent permitted by section 5 of the Workers' Compensation Act (Compensation Act) (Ill. Rev. Stat. 1991, ch. 48, par. 138.5), by law or in equity. The court entered an order allowing the intervention and granting the prayer of the petition.

Simmons filed separate identical motions as to Firestone and Defender, asking the court to enforce the settlement with Kemp, find the settlement was in good faith, and dismiss Simmons as a third-party defendant.

In its motion, Simmons alleged that (1) the subrogation agreement was "part and parcel" of the settlement agreement between it and Kemp; (2) a partial waiver of a workers' compensation lien is sufficient consideration to support a good-faith finding; (3) by agreeing to the terms of the settlement agreement in order to persuade Simmons to submit the settlement contract for approval by the Industrial Commission, Kemp had caused Simmons to rely on his representations to its detriment and that Kemp was estopped from allowing a third-party action to proceed against Simmons; and (4) although a written settlement agreement was contemplated but not executed because of Kemp's recalcitrance, the terms of the settlement were clear and could not be unilaterally repudiated by Kemp. Attached to the motion was an affidavit of Brady, stating that the agreement regarding the lien waiver was for Simmons to waive

15% of its "net recoverable lien" and that Simmons' agreement to waive a portion of its lien was made solely to facilitate resolution of any and all issues relating to Simmons' exposure in any common law action pending or contemplated.

Kemp and Firestone filed separate responses in opposition to Simmons' motion, denying that terms of the settlement agreement had been agreed upon.

Attached to Kemp's response was an affidavit of Harvey stating that (1) Brady did not raise the issue of a good-faith release being part of the proposed settlement at the time of his receipt of Brady's March 30, 1992, letter or at any earlier time; (2) after receipt of the completed settlement contracts and the proposed subrogation agreement, he had a telephone conversation with Brady, wherein Brady agreed the only negotiations for settlement had been in the workers' compensation case, that Harvey had previously advised Brady of Kemp's acceptance of the settlement offer, and it was not until after acceptance of the offer that Brady proposed Kemp sign any type of release other than the workers' compensation settlement contract; and (3) Kemp did not agree to any settlement of his workers' compensation claim that included any type of subrogation agreement or other release document, other than the standard form which he signed.

After a hearing on Simmons' motions, the court entered a written order on January 22, 1993, granting the motions and dismissing Simmons from the instant case. In that order, the court found that (1) Simmons' counsel made a settlement offer of 25% loss of use of the man and waiver of 15% of Simmons' "net recoverable lien ($21,701.19)," which was accepted by letter from Kemp's counsel dated April 14, 1992; (2) trial counsel for Kemp acknowledged at the hearing on the motions that this waiver offer was never rejected; (3) it was implicit in the portion of the offer concerning the 15% lien waiver that the waiver was being given in the workers' compensation proceeding to extinguish any possible liability of Simmons as a defendant or third-party defendant in any common law action that Kemp might reinitiate, and trial counsel for Kemp acknowledged at the hearing on the motions that Simmons' lien could only apply to a common law action recovery by Kemp; (4) Kemp's signing of the blank settlement contract, per his attorney's instructions for completion by Simmons' attorney, indicated his personal awareness of the settlement and his ratification of his attorney's acceptance of the offer; (5) the subrogation agreement, although not an explicit term of the settlement agreement, was merely a conven-

ience and a means of facilitating a memorialization of that part of the settlement, rather than a necessary element or term of the settlement, and Kemp's refusal to sign the document cannot constitute a rejection after the fact; (6) the omission of any mention of the 15% lien waiver in the settlement agreement may be explained by the fact that the waiver related only to the common law action, rather than the workers' compensation proceeding; (7) there was a meeting of the minds between Kemp and Simmons, and a settlement agreement existed; (8) a partial lien waiver by an employer constitutes sufficient consideration for an extinguishment of tort liability and constitutes a good-faith settlement; and (9) since there is a good-faith settlement extinguishing Simmons' tort liability, Simmons should be dismissed as a party to the case as a means of enforcing settlement.

Appellants filed motions for reconsideration. Attached to Kemp's motion was his own affidavit which stated that (1) during settlement negotiations he was aware of a request by Simmons' attorney that he execute a good-faith release as a part of the proposed settlement of the compensation case, but he refused; (2) he never extended authority to Harvey to agree that he would sign a good-faith release as a part of the settlement; (3) he never agreed to settle a claim, other than his workers' compensation claim; (4) he was aware that a partial waiver of Simmons' lien had a potential value if he recovered money from Firestone and/or Defender in this case; and (5) he would not have accepted the workers' compensation settlement of $36,701.25 without either the partial lien waiver or payment of additional money to him.

The court denied the motions to reconsider. However, in its order, it struck the language in its original order which stated Simmons' offer was to waive 15% of its net recoverable lien. The revised order simply stated the offer was to waive 15% of Simmons' lien.

Appellants urge on appeal that the trial court erred in finding that (1) there was a valid settlement agreement between Simmons and Kemp, and (2) a partial waiver by Simmons of its workers' compensation lien was sufficient consideration to support a finding that the settlement was in good faith.

■ Section 5 of the Compensation Act provides, in relevant part, as follows:

"Damages—Illegally employed minors—Third party liability

* * *

(b) Where the injury or death for which compensation is

payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.

Out of any reimbursement received by the employer pursuant to this Section, the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement.

If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party." Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b).

■ Section 2 of the Contribution Act provides, in relevant part, as follows:

"Right to contribution

* * *

(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so

provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

(d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." Ill. Rev. Stat. 1991, ch. 70, par. 302.

The burden of proving the existence of a settlement agreement rests upon the party seeking to enforce it. (*Commonwealth Edison Co. v. Industrial Comm'n* (1988), 167 Ill. App. 3d 229, 233, 521 N.E.2d 159, 161.) That proof must be clear, convincing and satisfactory. *In re Marriage of Parr* (1981), 103 Ill. App. 3d 199, 204, 430 N.E.2d 656, 659.

The alleged agreement by which Kemp released Simmons from common law liability in return for the 15% waiver of Simmons' workers' compensation lien is not contained in the written settlement contract by which Kemp and Simmons settled the workers' compensation case. Nor is that agreement contained in any correspondence between the parties' attorneys. Thus, the agreement which Simmons seeks to enforce is an oral agreement. The terms of an oral agreement must be definite and certain and there must be a meeting of the minds. (*Rybak v. Provenzale* (1989), 181 Ill. App. 3d 884, 891, 537 N.E.2d 1321, 1325-26.) Whether an oral contract exists, its terms and conditions, and the intent of the parties are questions of fact. Thus, a reviewing court will not reverse the judgment of the trial court merely because different conclusions could be drawn. *In re Estate of Kern* (1986), 142 Ill. App. 3d 506, 514, 491 N.E.2d 1275, 1280.

■ In this case, it was necessary for the trial court to find that a settlement agreement existed and that it was made in good faith before dismissing Simmons from the action. We hold the evidence fails to show in a clear, convincing, and satisfactory manner that there was a meeting of the minds between Kemp and Simmons, and we find that a settlement agreement did not exist.

As noted, the settlement contract approved by the Industrial Commission did not mention Simmons' waiver of 15% of its workers' compensation lien. Nor did it state that the waiver of this lien was given to secure a release from potential common law liability. Kemp refused to sign the subrogation agreement tendered by Simmons. Appellants find these facts significant, while Simmons argues that the waiver had nothing to do with settlement of the workers'

compensation case and, therefore, it was unnecessary to include it as a term of the settlement. It also argues that Kemp's refusal to sign the subrogation agreement should not prevent a finding of a good-faith settlement. However, in addition to the omission of key terms of the settlement, Kemp's affidavit and that of his attorney stated unequivocally that the waiver was not given to secure a release of Simmons' common law liability, but rather was given to induce a settlement of the workers' compensation case itself. Simmons argues, and the trial court held, that implicit in such a waiver is the understanding that it is given to secure such a release. However, as appellants point out, it is not uncommon for an employer to waive part or all of its workers' compensation lien in order to secure a settlement of a compensation case. Undoubtedly, all terms of a settlement should be included in the settlement documents. The fact that they were not in the instant case merely serves to illustrate the lack of agreement between Kemp and Simmons as to what the lien waiver was given for. Indeed, we are not deciding here whether any offer to waive 15% of the lien was ever accepted as a part of a binding agreement. Simmons apparently believed it was securing a release from common law liability. Kemp evidently believed the lien waiver was an additional inducement to him to settle his workers' compensation case. There is nothing in the correspondence between the parties' attorneys which gives more credence to one or the other party's version of the agreement. Under such circumstances, the trial court erred in finding that a settlement agreement existed.

In light of the views expressed herein, we need not address appellants' contention on appeal that the trial court erred in finding that the settlement was in good faith.

For the reasons stated, the order of the trial court is reversed.

Reversed.

KNECHT and GREEN, JJ., concur.