**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240075-U

Order filed October 17, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| MOLLY G. MARCINONIS, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-24-0075 |
| | ) | Circuit No. 23-SC-3835 |
| | ) | |
| COURTNEY D. KAVANAUGH, | ) | The Honorable |
| | ) | James B. Harvey, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Presiding Justice McDade and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  Trial court did not err in finding that defendant breached a valid and enforceable agreement to repay plaintiff, but evidence did not support amount of trial court's judgment.

¶ 2

¶ 3        Plaintiff Molly G. Marcinonis filed a complaint against defendant Courtney D. Kavanaugh, alleging that defendant owed her $10,000. Following a trial, the circuit court found in favor of plaintiff and ordered defendant to pay plaintiff $10,000 plus costs. Defendant appeals,

arguing that (1) plaintiff failed to prove a breach of contract, and (2) the evidence does not support the monetary judgment. We affirm the judgment in favor of plaintiff but modify the amount.

¶ 4                                                              BACKGROUND

¶ 5          On July 23, 2023, plaintiff filed a small claims complaint against defendant, alleging that defendant owed her $10,000. Plaintiff alleged that she loaned defendant more than $10,000 over the course of two years with the expectation that defendant would pay her back in full. Plaintiff further alleged that defendant repeatedly promised to pay her back but never did so. Plaintiff alleged that defendant failed to make any attempt to repay the money she owes plaintiff.

¶ 6          On January 8, 2024, a bench trial was held. Plaintiff testified that she agreed to loan defendant $10,000 and that defendant agreed to repay her $100 per week until the loan was repaid. However, according to plaintiff, defendant repaid her a total of only $250.

¶ 7          Plaintiff testified that she kept a "tab" of how much defendant owed her. On October 6, 2021, the total was $8000. In February 2022, the total was $10,000. According to plaintiff, the total eventually reached "over $10,000." Plaintiff testified that in February 2022, she told defendant that she owed her $10,000, and defendant said she would pay her.

¶ 8          Plaintiff testified that she met defendant at work in 2016 and built a friendship with her. Plaintiff testified that she first loaned defendant money to help her pay bills. According to plaintiff, defendant orally agreed to pay her back. Plaintiff testified that defendant never paid her with cash she obtained from an automated teller machine (ATM) at a restaurant and bar called JT's Porch but admitted there were times when defendant gave her cash.

¶ 9          Defendant testified that she works in a sales job and as a bartender. She said she receives a lot of cash tips. She met plaintiff when they worked together at a bar and restaurant, and she and plaintiff became friends. Defendant testified that she gave plaintiff cash during their friendship

2

and did not expect plaintiff to pay her back. Defendant testified that plaintiff gave her money, but defendant did not think it was a loan. Defendant testified that she did not recall having an oral or written contract to pay back plaintiff at a certain date or time.

¶ 10        Plaintiff submitted exhibits showing payments she made to defendant through Cash App and Zelle totaling $10,305. Two Cash App payments made on May 1, 2022, for $400 each, and two Cash App payments on May 2, 2022, for $500 each are labeled "For reimburse[.]" The payment from plaintiff to defendant on May 15, 2022, for $100 states it is "For reimbursement." The exhibits showed payments from defendant to plaintiff totaling $255.

¶ 11        Plaintiff agreed that payments she made to defendant on May 1, 2 and 15, 2022, are labeled as reimbursements. She also agreed that those payments appeared to be amounts she owed to defendant and was repaying. Plaintiff admitted that those transfers did not constitute loans to defendant.

¶ 12        Defendant agreed that payments labeled as "reimbursement" meant that plaintiff was paying her back for something. Defendant denied that plaintiff ever paid her bills. Defendant testified that she often used the ATM at JT's Porch to obtain cash to give plaintiff. She testified that 90% of the withdrawals she made from that ATM were for cash she gave to plaintiff. She agreed that the withdrawals from the ATM at JT's Porch from December 6, 2021, to October 24, 2022, totaled $4230. Defendant testified that she gave defendant more than $4230 in cash. Defendant agreed that she sent plaintiff a text that stated: "I can send you some shit in a couple of weeks and then I will get on a schedule."

¶ 13        Uzma Shamsi, defendant's friend, testified that she witnessed defendant give plaintiff cash after making withdrawals from an ATM at JT's porch "[a] dozen times." Shamsi denied ever hearing plaintiff tell defendant that she owed her money. Danny Maldonado, another friend of

defendant's, testified that he witnessed defendant give plaintiff money or pay for her when they went out socially. He never heard plaintiff tell defendant she owed her money.

¶ 14    Both plaintiff and defendant submitted exhibits to the court without objection from the other party. Defendant's exhibits consisted of bank statements showing the withdrawals she made from the ATM at JT's Porch at 665 W. Roosevelt Road in Lombard from December 2021 to December 2022.

¶ 15    In addition to the exhibits showing plaintiff's payments to defendant, plaintiff also provided the court with text messages between plaintiff and defendant. In a text message dated from November 21, 2021, plaintiff stated: "You're new tab is $8300[.]" Defendant replied, "I'm gonna put u as my beneficiary for my life insurance hahaha[.]" In another text message, plaintiff stated: "Hey so since Danny is paying rent would you be willing to send me like 200 on sundays?" Defendant replied, "I can send you some shit in a couple of weeks and then I will get on a schedule."

¶ 16    On January 19, 2024, the trial court issued an order finding in favor of plaintiff and against defendant in the amount of $10,000. Defendant appealed.

¶ 17                                                    ANALYSIS

¶ 18    We first note that plaintiff did not file a brief. However, plaintiff's failure to file a brief does not require automatic reversal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.,* 63 Ill. 2d 128, 131 (1976). Defendant, as the appellant, bears the burden of establishing error. *Id.* at 132. "When the record is simple, and the claimed errors are such that this court can easily decide them on the merits without the aid of an appellee's brief, this court should decide the appeal on its merits." *Plooy v. Paryani,* 275 Ill. App. 3d 1074, 1088 (1995). In this case, defendant's brief

4

sufficiently presents her issues, and the record is relatively simple. Therefore, we address the merits.

¶ 19                                              I. Breach of contract

¶ 20        Defendant first argues that plaintiff failed to establish that defendant breached a contract requiring her to repay plaintiff.

¶ 21        To meet her burden in a breach of contract action, a plaintiff must establish an offer and acceptance, consideration, definite terms of the contract, plaintiff's performance of all required contractual conditions, defendant's breach of the terms of the contract, and damages resulting from the breach. *Mannion v. Stallings & Co., Inc.*, 204 Ill. App. 3d 179, 186 (1990). The elements of a breach of contract action are the same whether the alleged contract is oral or written. See *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 68.

¶ 22        Whether an oral contract exists, as well as its terms and conditions, are questions of fact for the circuit court. *Kemp v. Bridgestone/Firestone, Inc.*, 253 Ill. App. 3d 858, 865 (1993). Additionally, whether a breach of contract has occurred is a question of fact. *Timan v. Ourada,* 2012 IL App (2d) 100834, ¶ 24. We will disturb a trial court's determinations on questions of fact only if they are against the manifest weight of the evidence. *Anderson v. Kohler*, 397 Ill. App. 3d 773, 785 (2009).

¶ 23        A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding is unreasonable, arbitrary and not based on the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). This standard gives deference to the trial court as the finder because it is in the best position to observe the conduct and demeanor of the parties and witnesses. *Id*. We will not substitute our judgment for that of the trial court regarding the credibility of witnesses, the weight to be given the evidence, or the inferences to be drawn. *Id*. at 350-51.

5

¶ 24    Here, the trial court's determination that an oral agreement between the parties existed was not against the manifest weight of the evidence. Though defendant testified that she did not recall entering into an oral or written contract, plaintiff testified otherwise. Furthermore, the texts between the parties corroborate the existence of an agreement. On several occasions, plaintiff sought payment from defendant in text messages. In response to those messages, defendant did not dispute that she owed plaintiff money. Rather, defendant said she would "get on a schedule" to repay plaintiff the amount she owed. Thus, the evidence supports that circuit court's finding that an agreement existed between the parties.

¶ 25    The record also establishes that defendant breached the agreement by failing to pay plaintiff the amount she owed her. Just as the text messages between the parties establish the existence of a contract, they also establish that defendant breached the contract. In response to plaintiff's requests for money from defendant, defendant promised to pay. However, according to plaintiff's testimony, defendant paid her only $250. The exhibits plaintiff provided support her testimony, showing payments from defendant to plaintiff totaling just over that amount: $255. Thus, the evidence supports that defendant breached the oral agreement between the parties.

¶ 26    Finally, the record supports plaintiff's claim that she suffered damages, as the evidence shows that defendant failed to repay her in full as required by their agreement. The issue is the amount defendant owes.

¶ 27                                    II. Amount of Damages

¶ 28    Defendant contends that the circuit court's award of damages is improper and not supported by the evidence.

¶ 29    The plaintiff has the burden to present evidence of each element of her claim, including damages. *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2021 IL App (1st) 200894, ¶ 61.

"As the party seeking to recover, the plaintiff bears the burden of proving that he or she sustained damages resulting from the breach and establishing both the correct measurement of damages and the final computation of damages based on that measurement." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 196 (1994).

¶ 30 In a bench trial, the trial court sits as a tier of fact and can weigh the evidence and determine the credibility of witnesses. *Fisher v. City of Aledo*, 23 Ill. App. 3d 190, 192 (1974). We will not substitute our judgment for that of the trial court's on questions of fact submitted, tried, and determined from the resolution of conflicting evidence. See *Best*, 223 Ill. 2d at 350-51.

¶ 31 Here, plaintiff alleged in her complaint and at trial that defendant owed her $10,000. The evidence she presented to the court in the form of exhibits showed payments to defendant totaling $10,305. Of those payments, plaintiff admitted that $1900 constituted reimbursements for amounts she owed defendant. Plaintiff also presented evidence showing that defendant paid her $255. Thus, the amount plaintiff proved that defendant still owes her is $8150.

¶ 32 Defendant contends that this amount should be further reduced by $4230, the amount she withdrew from the JT's Porch ATM based on her and Shamsi's testimony that defendant often gave plaintiff cash that she withdrew from that ATM. We disagree.

¶ 33 Although defendant established through her bank statements how much she withdrew from JT's Porch's ATM, there was a dispute about how much, if any, of that cash defendant gave to plaintiff. Plaintiff testified that defendant did not give her any, while defendant and her friend testified that defendant gave plaintiff the cash she obtained from the ATM many times. Resolution of this conflicting testimony was the role of the trial court, as the trier of fact. *Fisher*, 23 Ill. App. 3d at 192. In granting plaintiff the full amount of the damages she requested, the trial court must have resolved this conflict in plaintiff's favor, finding plaintiff more credible than defendant and

her witness. Because the trial court was in the best position to observe the conduct and demeanor of the parties and witnesses, we will not substitute our judgment on that issue. See *Best*, 223 Ill. 2d at 350.

¶ 34    Nevertheless, as explained above, considering all the evidence presented to the court, plaintiff proved that defendant owes $8150. Thus, the trial court's award of $10,000 was against the manifest weight of the evidence.

¶ 35    "Under these circumstances no purpose is served in remanding the cause for a new trial for damages, and consistent with our powers under [Illinois] Supreme Court Rule 366(a)(1) [(eff. Feb. 1, 1994)] ***, we reduce the judgment" in plaintiff's favor against defendant. *King v. Ashbrook*, 313 Ill. App. 3d 1040, 1046 (2000). Accordingly, we affirm the judgment of the circuit court of Will County but reduce the amount of the judgment to $8150 plus costs.

¶ 36                                    III. CONCLUSION

¶ 37    The judgment of the circuit court of Will County is affirmed as modified.

¶ 38    Affirmed as modified.