12 June 2000

NO. 4-99-1013

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

PAMELA M. KING and MARK KING, ) Appeal from

Plaintiffs-Appellees, ) Circuit Court of

 ) Coles County

JOHN ASHBROOK,        ) No. 98SC1299

Defendant-Appellant. )

 ) Honorable

 ) Teresa K. Righter,

              ) Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

In August 1998, plaintiff, Pamela M. King, sued defen

dant, John Ashbrook, for alleged damages she incurred from the purchase of defendant's home.  In November 1998, plaintiff's husband, Mark King, was added as a party plaintiff.  Following a bench trial, the trial court entered judgment for plaintiffs.  

Defendant appeals, arguing (1) the statute of limitations of the Residential Real Property Disclosure Act (Disclosure Act) (765 ILCS 77/60 (West 1998)) applied to the present case, (2) evidence at trial failed to prove liability under the Disclosure Act, (3) evidence did not establish a breach of contract, and (4) the evidence at trial did not support the amount of damages awarded.  We affirm as modified.

I. BACKGROUND

In March 1997, defendant listed his home for sale with a real estate agent.  Defendant executed a residential real property disclosure report (disclosure report), as required by the Disclosure Act (765 ILCS 77/35 (West 1996)), indicating in part:

"2. I am aware of flooding or recurring leakage problems in the crawlspace or base

ment.

* * *

5. I am aware of leaks or material de

fects in the roof, ceilings or chimney.

* * *

9. I am aware of material defects in the well or well equipment."

The disclosure report also contained the following explanation of the items cited above:

"2) Minor leak on west basement wall-- to be fixed

5) Roof leak on sun porch

9) Well pump not currently working (not main supply of water)."

In April 1997, plaintiffs entered into a contract to purchase defendant's home.  An interlineation at the addendum section of the contract, next to a box containing a check mark indicating the disclosure report was attached, contained the handwritten notation: "2-5- repaired" (number 9 of the interlineation contains an "X" overstrike).  In June 1997, plaintiffs moved into the home. 

In August 1998, plaintiff sued defendant in small claims court, alleging defendant was indebted to plaintiff for $2,835 "for basement and roof repairs that were to be fixed before [the] purchase of [the property]."  In November 1998, a bench trial was held on plaintiff's complaint.  Plaintiff's husband joined in the complaint.  Plaintiffs appeared 
pro
 
se
 and defendant appeared with counsel.  Plaintiffs presented an esti

mate for the repair to the basement wall for $2,150 and $500 for the repair of the roof.  The trial court found for the plaintiffs and awarded them $2,684 plus costs.  No transcript was made of the proceeding.  In December 1998, defendant filed a petition to file a posttrial motion.

In September 1999, the trial court adopted a by

stander's report of the November 1998 trial.  See 166 Ill. 2d R. 323(c).  The bystander's report indicated Pamela and Mark moved into the home on June 10, 1997.  Approximately two weeks later, ceiling tiles fell from the ceiling of the back porch.  Mark telephoned their real estate agent, who later informed Mark defendant did not plan on doing anything about the defects.  The trial court sustained defendant's hearsay objection.  In January 1998, plaintiffs' attorney wrote defendant informing him of major defects in the home.  Defendant responded stating plaintiffs had the opportunity to have a professional inspector evaluate the property.  Pamela testified it was difficult getting estimates because contractors were busy making repairs after a tornado struck nearby.

Plaintiffs' real estate agent, John Cowger, testified he made the interlineation on the contract based on information from defendant.  Approximately two weeks after the plaintiffs moved into the home they contacted him about leaks in the roof and basement.  Cowger contacted defendant's real estate agent, who later informed him defendant had no intention to make any further repairs.

John testified he agreed to repair the leak on the west wall of the basement.  He made the repair in the same manner he previously repaired a different leak.  The wall did not leak after he made the repair.  He also repaired the roof.  He assumed the items were repaired because he did not notice any leaks during the remaining time he was in the home.  He did not receive any notification plaintiffs had problems with the home until he was contacted by a letter from plaintiffs' attorney in January 1998.  He informed the plaintiffs' attorney plaintiffs had an opportunity to inspect the home before they purchased it.  

The trial court found for the plaintiffs.  The court stated: 

"If it were not for the notation on the con

tract, I would say the [d]isclosure [r]eport would relieve the [d]efendant[] of any lia

bility for the damages claimed.  Because the notation was made on the contract, and both parties acknowledge its presence, that means they agreed to repair the items and they were not repaired."  

The trial court awarded plaintiffs $2,684 and costs, finding "I will reduce the settlement somewhat because I think the work could be done a little cheaper."  

In October 1999, defendant filed a brief and argument in support of his posttrial motion, in which he argued (1) damages were awarded based on inadmissable evidence, (2) the cause was barred by the statute of limitations in the Disclosure Act, and (3) defendant was not liable under the Disclosure Act.  In November 1999, the trial court denied defendant's posttrial motion.  The trial court found the case to be based on a breach of contract, and, therefore, the statute of limitations of the Disclosure Act did not control.  Based on the plaintiff's testi

mony, it was clear the items were not repaired in a "reasonable fashion" because leaks occurred after the plaintiffs moved into the home.  Although defendant testified he attempted to repair the items and he believed he did repair them, the contract provided they would be repaired and they were not.  The trial court also found defendant waived any objection to the admission of plaintiffs' estimates for the repairs by failing to object at trial.  The court found the estimates reliable.  This appeal followed.

II. ANALYSIS

A. Statute of Limitations

Defendant argues the trial court erred in ruling the statute of limitations in the Disclosure Act was not applicable to the present case.  Plaintiffs contend the 10-year statute of limitations applies because the action was based on a breach of contract, not a violation of the Disclosure Act.

The statute of limitations imposed on written contracts is 10 years from the time the cause of action accrued.  735 ILCS 5/13-206 (West 1998).  Section 60 of the Disclosure Act, by contrast, states: "[n]o action *** may be commenced later than one year from the earlier of the date of possession, date of occupancy, or date of recording."  765 ILCS 77/60 (West 1998).  The purpose of the Disclosure Act is to provide prospective buyers with information about material defects known to the seller concerning the property they are purchasing.  See 765 ILCS 77/25, 35 (West 1998).

In the present case, the trial court rejected defen

dant's argument the Disclosure Act's one-year statute of limita

tions applied because it found the case was based on a breach of contract.  We agree.  

Plaintiffs brought suit based on defendant's failure to repair the roof and basement.  The complaint arose from defen

dant's promise to repair the leaks as indicated in the interlineation of the sales contract.  Plaintiffs did not allege defendant failed to disclose the material defects as required by the Disclosure Act.  In fact, defendant did disclose the defects on the disclosure report.  The fact the disclosure report became part of the contract did not eliminate plaintiff's right to sue for a breach of contract or change the statute of limitations for breach of contract.  The Disclosure Act does not limit or change a purchaser's common-law remedies.  See 765 ILCS 77/45 (West 1998); 
Hirsch v. Feuer
, 299 Ill. App. 3d 1076, 1082-84, 702 N.E.2d 265, 270-71 (1998) (reversing trial court's dismissal of breach of contract claim and Disclosure Act claim).  Therefore, plaintiff's action was brought within the appropriate statute of limitations.

B. Failure To Prove Liability 

Next, defendant argues the evidence at trial failed to prove liability under the Disclosure Act.  As stated above, plaintiffs' action was based on a breach of contract, not a violation of the Disclosure Act.  Therefore, liability under the Disclosure Act is irrelevant to plaintiffs' action and we will not address defendant's argument.

C. Breach of Contract

Defendant also argues plaintiffs did not establish a breach of contract.  Specifically, defendant contends (1) the interlineation did not constitute a definite and certain term of the contract, (2) the evidence did not support the trial court's finding the repairs were not completed in a "reasonable fashion," and (3) the contract did not require the repairs be completed in a "reasonable fashion."

Essential terms of a contract must be definite and certain in order for a contract to be enforceable.  The terms are sufficiently definite and certain if, under the rules of con

struction and applicable principles of equity, the trial court can ascertain what the parties agreed to by the terms and provi

sions of the contract.  
Midland Hotel Corp. v. Reuben H. Donnelley Corp.
, 118 Ill. 2d 306, 314, 515 N.E.2d 61, 65 (1987).

In the present case, both parties admit the interlineation was on the contract before they signed it.  The interlineation "2-5- repaired" next to the section of the sales contract indicating the disclosure report is part of the con

tract, and the facts contained within the disclosure report, were sufficiently definite and certain to establish defendant was expected to repair the roof and basement leaks as part of the purchase agreement.  This is further evidenced by defendant's testimony he agreed to repair the basement wall and also at

tempted to repair the roof.

Furthermore, the evidence at trial did support the trial court's finding defendant did not make the repairs in a "reasonable fashion" and such repair had to be completed in a "reasonable fashion."  We defer to the trial court's findings unless they are against the manifest weight of the evidence.  
Grove v. Huffman
, 262 Ill. App. 3d 531, 537, 634 N.E.2d 1184, 1188 (1994).  The parties entered into the sales contract in April 1997.  In June 1997, plaintiffs moved into the home and within two weeks the roof leaked.  Based on this short time frame between defendant attempting to repair the leaks and plaintiffs' identification of leaks, the trial court's finding defendant failed to make the repairs in a "reasonable fashion" was not against the manifest weight of the evidence.   

In addition, common sense dictates the repairs had to be made in a "reasonable fashion."  The interlineation stated items 2 and 5 would be repaired.  To "repair" is to "restore to a sound or good state."  Black's Law Dictionary 1298 (6th ed. 1990).  Unambiguous terms of a contract are given their ordinary and natural meaning.  
Yamnitz v. William J. Diestelhorst Co.
, 251 Ill. App. 3d 244, 251, 621 N.E.2d 1046, 1051 (1993).  The ordi

nary and natural meaning of repair required defendant make the repairs in a reasonable fashion. 

D. Damages

Last, defendant argues the cause should be remanded for a new trial on the issue of damages.  Defendant contends (1) the estimates used by the court to determine damages were hearsay and (2) the trial court's damages were the result of a compromise.

In the present case, plaintiffs offered a written estimate of $2,150 for the repair of the basement wall and a separate estimate of $500 for the repair of the roof.  The estimates included a description of the work to be completed.  Defendant did not object to the trial court's admission of the estimates into evidence.  Hearsay evidence admitted without objection may be considered by a trial court and is given its natural probative effect.  
Bridgestone/Firestone, Inc. v. Doherty
, 305 Ill. App. 3d 141, 149, 711 N.E.2d 799, 805 (1999).  Therefore, the trial court did not err in considering the esti

mates admitted into evidence without objection.

Generally, the proper amount of damages awarded for defects found after the conveyance of property is the cost of correcting the defective conditions.  
Wells v. Minor
, 219 Ill. App. 3d 32, 40, 578 N.E.2d 1337, 1343 (1991).  Absolute certainty about the amount of damages is not required, but the damages cannot be predicated on mere speculation, conjecture, whim, or hypothesis.  The evidence must support a basis for the computa

tion of damages with a fair degree of probability.  
City of Chicago v. Michigan Beach Housing Cooperative
, 297 Ill. App. 3d 317, 323, 696 N.E.2d 804, 809 (1998).

Plaintiffs' complaint sought $2,835 in damages.  The estimates admitted into evidence at trial indicated the cost of repairing the defects was $2,650.  The trial court awarded plaintiffs $2,684 and costs.  Based on the evidence as repre

sented on appeal, we find the trial court erred in awarding plaintiffs damages greater than the amount supported by the evidence.  The record is devoid of any facts indicating the basis of increasing the award $34 from the cost of repairing the defects.  In addition, no evidence indicates the estimates are incorrect.  Under these circumstances no purpose is served in remanding the cause for a new trial for damages, and consistent with our powers under Supreme Court Rule 366(a)(1) (155 Ill. 2d R. 366(a)(1)), we reduce the judgment in plaintiffs' favor against defendant to $2,650 plus costs.  See 
Finazzo v. Mid-

States Finance Co.
, 63 Ill. App. 2d 161, 176, 211 N.E.2d 290, 298 (1965); 
Levy v. Rosen
, 300 Ill. App. 523, 532, 21 N.E.2d 653, 657 (1939).

    
 III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed as modified.

Affirmed as modified.

STEIGMANN and McCULLOUGH, JJ., concur.