NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231417-U

NO. 4-23-1417

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 9, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| GREGORY WIESKAMP, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Mercer County |
| ARTHUR NORRIS, | ) | No. 23SC58 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Matthew W. Durbin, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed as modified the trial court's judgment in favor of plaintiff where (1) the oral agreement between the parties constituted a valid and enforceable contract that defendant breached but (2) the full amount of the judgment was unsupported by the evidence.

¶ 2    *Pro se* defendant, Arthur Norris, appeals the trial court's judgment in favor of plaintiff, Gregory Wieskamp, in this small claims breach-of-contract action. At trial, plaintiff was represented by counsel, while defendant appeared *pro se*. In this appeal, defendant argues that the court erred in granting judgment for plaintiff in the amount of $1749 because an oral agreement between the parties was not enforceable and the award of damages was based on impermissible speculation. We affirm as modified.

¶ 3                                    I. BACKGROUND

¶ 4        Plaintiff, who is not a professional mechanic, occasionally performed such work for other people from his personal garage in Joy, Illinois. On or about February 13, 2023, defendant asked plaintiff to repair a rototiller and to "look at" both a red truck and a black truck that defendant owned. The only evidence of the parties' agreement was their trial testimony and exhibits consisting of eight screenshots of text messages exchanged between them. That evidence showed the following.

¶ 5        On February 13, 2023, plaintiff told defendant to bring his black truck to him after defendant "f[ound] a fuse blown" and wanted to "get a scan on it." On February 18, 2023, the parties texted about the "labor on the spark plug testing [and] replacement for the black truck," and plaintiff told defendant that it would cost "250 labor for everything."

¶ 6        On March 21 and 22, 2023, plaintiff texted defendant that he was "replacing the front brake line on this truck" and asked whether defendant "want[s the brake pads] replaced" for $40, given that they "are very thin." Defendant replied: "that's [*sic*] would be nice."

¶ 7        On March 23, 2023, defendant had the black truck back in his possession and informed plaintiff that the "engine light [is] on but running great," though the "heater blower [is] not working." Defendant said he "get[s] paid in two weeks" and "will pay [plaintiff] on [the black truck] then."

¶ 8        On March 29, 2023, plaintiff informed defendant that "[p]arts and labor [on the black truck] yesterday [were] $320." Defendant replied: "The parts? A thermostat and antifreeze? I never dreamed it would be that much." Plaintiff explained that the parts included were "headlight[,] flush kit[,] hose[, and] hose clamps." Defendant then sent plaintiff a photo of coolant

leak repair that "[t]hey have *** at autozone." Plaintiff asked, "should I get it?" and defendant told him that he "[m]ight as well try it" because he "really need[s] something."

¶ 9	On April 7, 2023, plaintiff informed defendant that the "[black] truck is done for now" and that "the EGR valve and gasket is close to. [*sic*] $90." Defendant stated that he "just do[esn't] have it." Plaintiff noted that defendant has "a lot of things [he] could sell to raise cash" and that plaintiff was "in no hurry" to get paid. Plaintiff testified that at the end of April, he sent defendant an invoice that included all the receipts for parts and labor, though defendant testified that he never received it.

¶ 10	Plaintiff admitted in his trial testimony that he "no longer ha[d] the receipts" for the parts he purchased for the repair of the black truck, but he prepared a list of parts that he purchased, along with their prices, based on "looking up prices online" from AutoZone, "where [he] bought the parts locally in town." This list purported to show that plaintiff spent $924.90 on parts for the black truck, which he testified "were necessary" to "get [the truck] running again." When plaintiff moved to admit this exhibit into evidence, the trial court stated: "Okay. That will be admitted for limited purposes," as these are estimates, "not receipts."

¶ 11	As for labor, the parties agreed that defendant was to pay plaintiff $20 per hour. However, plaintiff admitted at trial that he did not keep track of his hours. Rather, plaintiff arrived at his total labor cost by "estimating the time [he] had spent based on the request by [defendant]." Plaintiff asserted that the total for the parts he purchased and labor he performed on the black truck was $2400, which broke down to $924.90 for parts and $1475.10 for approximately 73 hours of labor.

¶ 12	At the end of April 2023, the parties began discussing payment. In one text, defendant asked plaintiff: "How did it go from 650.00 to 2400.00 when all you did was the gas

tank and wiring then? You said you would fix the EGR for free." According to plaintiff, he "made offers to [defendant] for lesser amounts" so that he could "pay it on time." The parties failed to agree on the amount owed.

¶ 13    On June 23, 2023, plaintiff filed a complaint in small claims court through counsel. In his complaint, plaintiff alleged that defendant failed to pay in full for services rendered and "owes $2,400 based on the work done for him" on "many items ***, including but not limited to, a snow plow and tractor." The complaint admitted that plaintiff "ha[d] no written agreement with Defendant[ ]." Defendant answered the complaint on October 11, 2023. Defendant denied all of plaintiff's allegations and asserted various defenses but did not file a counterclaim.

¶ 14    The trial was held on November 1, 2023. Plaintiff's testimony centered on his repair of a rototiller, a red truck, and a black truck. Defendant argued that the complaint alleged work on a snowplow and a tractor, of which plaintiff presented no evidence. The trial court found that the complaint was adequately pleaded because of its catchall language of "including but not limited to" and limited the issues at trial to the repairs to which plaintiff testified. The court also precluded defendant's attempts to introduce evidence that plaintiff had damaged his property, ruling that defendant failed to file a counterclaim for such damages. Ultimately, the parties agreed that defendant had paid for the repair of the rototiller, and defendant admitted that he still owed plaintiff $60 for the repair of the red truck. The dispute, then, boiled down to the work plaintiff claimed to have done on the black truck.

¶ 15    Plaintiff testified that he understood that he "would be reimbursed" for the parts that he purchased and that he "would be paid for [his] labor." He testified that he believed that he worked only on tasks he and defendant agreed upon and that all the parts that he purchased were with defendant's authorization. Defendant testified that he "never asked [plaintiff] to" work on the

black truck; rather, he only "asked him to look at it." Under questioning by the trial court, defendant admitted that he expected to owe plaintiff "40 [dollars] for the [brake] pads and maybe two, three hours labor. *** [N]ot thinking $640." Defendant testified that "all [plaintiff] had to do is call me and give me an estimate," but "he's never shown me any receipts or nothing." Defendant testified that, from his perspective, plaintiff "went ahead and did all this work and never even told me he was going to do it."

¶ 16         The trial court found that "the rototiller was paid for" and "there is $60 owed on the red truck." The court further found that "there was an agreement to do some things" on the black truck, which included the brakes. Although the court found that the parties agreed on labor costs of $20 per hour, the court found that plaintiff's testimony as to the number of his hours to change the spark plugs was not credible. Consequently, the court found plaintiff's calculations "somewhat suspect," given plaintiff's lack of receipts and lack of evidence as to his time. Nevertheless, the court acknowledged that plaintiff's "labor is worth something on the work that [he] did do." The court entered a judgment in plaintiff's favor and against defendant in the amount of $1749, based on the exhibits, the $60 agreed upon, and the "equitable amount of work as well as the cost of parts with some labor, but not all."

¶ 17         This timely appeal followed.

¶ 18                              II. ANALYSIS

¶ 19         On appeal, defendant purports to advance three separate arguments that he intertwines: (1) plaintiff's complaint was insufficiently pleaded, (2) the trial court erred in finding that a contract existed, and (3) there was insufficient evidence of plaintiff's expenses both for parts and labor on the black truck. We note that while plaintiff did not file an appellee's brief in this appeal, the record in this case is simple, and we are able to decide the issues on appeal without the

aid of his briefing. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 20                    A. Compliance with Illinois Supreme Court Rule 341

¶ 21          Initially, we must comment on defendant's failure to file a brief that complies with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Specifically, his brief (1) does not set forth a standard of review, (2) contains a highly argumentative statement of facts, (3) cites his own appendix rather than the record on appeal, and (4) fails to use public-domain citations and pinpoint citations where appropriate. See Ill. S. Ct. R. 341(h)(3), (h)(6), (h)(7), (g) (eff. Oct.1, 2020); Ill. S. Ct. R. 6 (eff. July 1, 2011). Defendant also fails to set forth cogent legal arguments because his citations of authority do not support his conclusory statements.

¶ 22          Although defendant is proceeding *pro se*, "regardless of his status, no party is relieved of the duty to comply, as closely as possible, with the rules of our courts." *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 18. "Where an appellant's brief contains numerous Rule 341 violations and, in particular, impedes our review of the case at hand because of them, it is our right to strike that brief and dismiss the appeal." *Rosestone Investments, LLC*, 2013 IL App (1st) 123422, ¶ 18. Though it would be within this court's discretion to strike defendant's brief, in the interests of justice, we choose not to do so.

¶ 23                    B. Sufficiency of Plaintiff's Complaint

¶ 24          We briefly address defendant's contention that plaintiff insufficiently pleaded his cause of action. Defendant argues that because plaintiff's complaint references only a snowplow and tractor, his claims regarding the red and black pickup trucks should not have been considered.

¶ 25          In Illinois, "[a]ll objections to pleadings shall be raised by motion." 735 ILCS 5/2-615(a) (West 2022). Appellate review of such a motion is *de novo*. *Süd Family Ltd.*

*Partnership v. Otto Baum Co.*, 2024 IL App (4th) 220782, ¶ 41. But where a "defendant elects to file an answer to the complaint, the defendant *waives* any defect in the pleading." (Emphasis in original.) *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 60 (1994). Defendant filed an answer asserting—among other purported affirmative defenses—that "Plaintiff fails to state a claim," but he never filed a motion to dismiss the complaint. By answering the complaint, defendant waived any defects in the pleading.

¶ 26    Even had defendant not waived this issue, plaintiff's complaint was sufficient. It is generally true that "fact pleading is required in Illinois [citation] and that a complaint at law must allege sufficient facts to bring a plaintiff's claim within the scope of a legally cognizable cause of action." *Tannenbaum v. Fleming*, 234 Ill. App. 3d 1041, 1043 (1992). However, our supreme court "has established relaxed pleading requirements for small claims" to allow "litigants with a minimum of legal expertise *** to present their grievances to the trial court." *Tannenbaum*, 234 Ill. App. 3d at 1043. "All that is necessary in a small claims case for the complaint to be sufficient is that it clearly notify the defendant of the nature of plaintiff's claim." *Porter v. Urbana-Champaign Sanitary District*, 237 Ill. App. 3d 296, 300 (1992). Here, the complaint alleged that "[t]he defendant asked for many items to be repaired, *including but not limited to*, a snow plow and tractor." (Emphasis added.) Additionally, the trial court specifically noted the catchall language in the complaint, and after some discussion, limited its consideration to the items "testified to by the plaintiff," which included the rototiller, the red truck, and the black truck. Under the relaxed pleading requirements of small claims court, the wording of this complaint was sufficient to notify defendant of the nature of plaintiff's claims.

¶ 27                                    C. Contract Formation, Breach, and Damages

¶ 28          Next, defendant argues that the trial court erred in finding that he breached a valid and enforceable contract. "To succeed on a breach of contract claim, a plaintiff must plead and prove (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28.

¶ 29          At trial, the parties acknowledged that there was no written agreement. Plaintiff, however, pleaded that "defendant owes $2,400 based on the work done for him" because he "asked for many items to be repaired" but only paid "$400 out of a $2,800*** balance." Likewise, in his opening statement, plaintiff's counsel stated that he sought to "establish a verbal agreement" and asked for "damages on breaches by nonpayment of those agreements." By contrast, defendant argues that their verbal agreement did not amount to an enforceable contract because the material terms were not ascertainable and there was no mutual assent. Specifically, defendant asserts that he did not agree to all the parts that plaintiff purchased and all the labor that he performed. Accordingly, we will address (1) whether there is an enforceable contract and what its terms are, (2) whether defendant breached the contract, and (3) any resulting damages.

¶ 30          "[O]ral agreements are binding so long as there is an offer and acceptance to compromise and there is a meeting of the minds as to the terms of the agreement." *Quinlan v. Stouffe*, 355 Ill. App. 3d 830, 837 (2005). To be enforceable, the essential terms of a contract must be definite and certain. *Quinlan*, 355 Ill. App. 3d at 837-38. A contract is sufficiently definite and certain if the court is "enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do." (Internal quotation marks omitted.) *Quinlan*, 355 Ill. App. 3d at 838. An enforceable contract must

include a meeting of the minds or mutual assent as to its terms. *Quinlan*, 355 Ill. App. 3d at 838. Whether an oral contract exists, its terms and conditions, and the parties' intent are questions of fact. *Kemp v. Bridgestone/Firestone, Inc.*, 253 Ill. App. 3d 858, 865 (1993).

¶ 31 Because these "are questions of fact, *** the trial court's determinations on those questions will be disturbed only if they are against the manifest weight of the evidence." *Anderson v. Kohler*, 397 Ill. App. 3d 773, 785 (2009). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006). This standard "give[s] deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses." *Best*, 223 Ill. 2d at 350. This court "will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *Best*, 223 Ill. 2d at 350-51.

¶ 32 We conclude that the trial court was correct that there was an agreement between the parties that included ascertainable terms. Though defendant argues on appeal that he did not manifest his assent to any agreement, he conceded at trial that he (1) owes plaintiff $60 for the red truck, (2) agreed to pay plaintiff $20 an hour for labor, and (3) agreed to replace the brake pads on the black truck. The texts between the parties corroborate that defendant agreed to these terms. Thus, we hold that the court's finding that a contract existed and consisted of these terms is not against the manifest weight of the evidence. We further note that, to the extent defendant argues that this conclusion is contradicted by the fact that the trial court described the agreement as a "gentleman's agreement," which, according to a dictionary definition, could imply that it is not

enforceable, that argument is unavailing. In context, the court used the term colloquially, and we will not ascribe legal meaning to the use of this term.

¶ 33    The trial court also found that the contract between the parties encompassed all of the parts that plaintiff purchased for the black truck. We cannot say this finding was against the manifest weight of the evidence. The evidence at trial showed that defendant gave plaintiff the black truck to perform repairs on multiple occasions—in February to replace the spark plugs, in March to replace the brake line, brake pads, thermostat, antifreeze, headlight, flush kit, hose, and hose clamps, and again in April to replace the EGR valve and gasket. That defendant repeatedly gave the plaintiff the black truck for more repairs belies defendant's testimony that he only asked plaintiff to "look at" the truck.

¶ 34    The record also establishes that defendant breached the contract when he failed to pay plaintiff for the parts and labor to which the parties agreed. Like the existence of a contract, "[w]hether a breach of contract has occurred is a question of fact which will not be disturbed unless the finding is against the manifest weight of the evidence." *Bunge Corp. v. Northern Trust Co.*, 252 Ill. App. 3d 485, 499 (1993). Here, it is undisputed that defendant did not pay plaintiff for parts and labor on the black truck.

¶ 35    Furthermore, the record supports plaintiff's claim that he suffered damages, as defendant failed to pay him in full per their agreement. The issue is what amount was owed. Defendant argues that the trial court's judgment was based on speculation regarding both the hours of labor and parts purchased. While we disagree as to the parts, we agree that there is insufficient evidence in the record to uphold the total amount awarded for labor. "The burden rests on the party seeking recovery to establish not only that he sustained damages but also a reasonable basis for computation of those damages." *Keno & Sons Construction Co. v. La Salle National Bank*, 214

Ill. App. 3d 310, 312 (1991). "Absolute certainty about the amount of damages is not required, but the damages cannot be predicated on mere speculation, conjecture, whim, or hypothesis"; rather, "[t]he evidence must support a basis for the computation of damages with a fair degree of probability." *King v. Ashbrook*, 313 Ill. App. 3d 1040, 1045 (2000). However, "[p]roof of a bill for a particular amount, without more, is not evidence of the value of services rendered or materials furnished." *Keno & Sons Construction Co.*, 214 Ill. App. 3d at 312.

¶ 36        Here, plaintiff did provide itemized prices of each part that he purchased, even if they were just estimates. The trial court admitted this exhibit without objection from defendant and used this exhibit substantively to calculate plaintiff's damages for the parts purchased. In doing so, it generally found plaintiff more credible than defendant, and it awarded plaintiff the full amount for parts. Accordingly, this exhibit of estimated prices provided "a basis for the computation of damages with a fair degree of probability," especially where defendant did not object and "no evidence indicate[d] the estimates are incorrect." *King*, 313 Ill. App. 3d at 1045-46. Thus, we hold that the judgment for $924.90 in parts was not against the manifest weight of the evidence.

¶ 37        Respecting labor, we agree with defendant that plaintiff produced almost no evidence of the hours billed. Plaintiff himself testified that he did not keep track of his hours. The only specific evidence adduced at trial regarding labor was for the spark plugs and brake pads. Plaintiff estimated that changing the spark plugs took "a minimum of six hours," which the trial court found not to be credible based on its own personal experience. Plaintiff's estimate of six hours is also contradicted by his text to defendant that he would charge "250 [dollars] labor for everything" for the spark plugs. Given that plaintiff estimated that he paid $32 for the spark plugs, that calculation includes almost 11 hours of labor, not 6 hours. The only other testimony regarding

hours was that defendant expected to pay "40 [dollars] for the [brake] pads and maybe two, three hours labor." Yet, the court still awarded plaintiff $825—for about 41 hours at $20 an hour—for his labor. The court's only justification for this award was that it was sitting as a "court of equity" and could thus do equity, but this is a breach-of-contract action requesting damages—it neither asserts an equitable action nor requests an equitable remedy. We reiterate that "[t]he evidence must support a basis for the computation of damages." *King*, 313 Ill. App. 3d at 1045. The only credible evidence was defendant's admission that he believed he owed plaintiff for "two, three hours labor," which would amount to a maximum of $60 at $20 per hour. Consequently, we hold that the court's award of compensation for labor was against the manifest weight of the evidence. The evidence only supports a finding of $60 for labor for the brake pads.

¶ 38            We hold that the only damages that can be upheld based on the evidence are (1) $60 with respect to the red truck, (2) $924.90 for the parts that plaintiff purchased for the black truck, and (3) $60 for labor for the brake pads on the black truck. "Under these circumstances no purpose is served in remanding the cause for a new trial for damages, and consistent with our powers under [Illinois] Supreme Court Rule 366(a)(1) [(eff. Feb. 1. 1994)] ***, we reduce the judgment" in plaintiff's favor against defendant. *King*, 313 Ill. App. 3d at 1046. Accordingly, we affirm the judgment of the circuit court of Mercer County but reduce the amount of the judgment to $1044.90.

¶ 39                              III. CONCLUSION

¶ 40            For the reasons stated, we affirm the trial court's judgment as modified.

¶ 41            Affirmed as modified.